**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **NANCY CANO BUSTILLOS,** | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | |
| | § | EP-23-CV-00425-KC |
| **SHIV KUMAR; PRINCE FREIGHT** | § | |
| **CARRIER, INC.; and ALPHA** | § | |
| **LOGISTICS SERVICES, INC.,** | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are:

- Plaintiff Nancy Cano Bustillos's "Motion to Strike Defendants' Expert, Richard V. Baratta" ("Baratta Motion") (ECF No. 100), filed on August 12, 2024;

- "Plaintiff's Motion to Strike Defendants' Expert, Dr. Michael Mrochek" ("Mrochek Motion") (ECF No. 101), filed on August 12, 2024;

- "Plaintiff's Motion to Strike Defendants' Expert, Dr. Arthur D. Cortez" ("Cortez Motion") (ECF No. 103), filed on August 12, 2024;

- Defendants Shiv Kumar and Prince Freight Carrier, Inc.'s (jointly, "Defendants") "Motion for Jury Instruction of Spoliation" ("Spoliation Motion") (ECF No. 129), filed on September 5, 2024;

- Defendants' "Motion for Leave to File Sur-Reply to Plaintiff's Motion to Strike Expert Dr. Richard V. Baratta" (ECF No. 130), filed on September 6, 2024;

- Defendants' "Motion to Strike Expert Dr. Charles Baum" ("Baum Motion") (ECF No. 131), filed on September 13, 2024;

- Defendants' "Motion to Strike Expert Monica Cohen" ("Cohen Motion") (ECF No. 132), filed on September 13, 2024; and

- Defendants' "Motion to Strike Expert Dr. Bratislav Velimirovic" ("Velimirovic Motion") (ECF No. 133), filed on September 13, 2024.

United States District Judge Kathleen Cardone referred the motions to the undersigned Magistrate Judge for determination pursuant to 28 U.S.C. § 636(b)(1)(A) and Rule 1(c) of Appendix C to the Local Rules of the Western District of Texas.  For the reasons set forth below:

- The Baratta Motion is **DENIED**;

- The Mrochek Motion is **DENIED**;

- The Cortez Motion is **DENIED**;

- The Spoliation Motion is **DENIED**;

- Defendants' Motion for Leave to File Sur-Reply to Plaintiff's Motion to Strike Expert Dr. Richard V. Baratta is **DENIED**;

- The Baum Motion is **DENIED**;

- The Cohen Motion is **DENIED**;

- And the Velimirovic Motion is **GRANTED in part** and **DENIED in part**.

## I.    BACKGROUND

This case stems from a car accident that occurred on October 27, 2021.  Pl.'s First Am. Compl. 2, ECF No. 16.  Shiv Kumar, who was employed by Prince Freight Carrier, Inc., was driving a truck with an attached trailer.  *Id.* at 2–3.  He attempted a wide left turn and struck Plaintiff's car.  *Id.* at 3.  As a result, Plaintiff asserts that she sustained bodily injuries.  *Id.*  On October 3, 2023, Plaintiff sued Defendants (and a third defendant, Alpha Logistics Services, Inc., another employer of Kumar) in state court.  *Id.* at 2–3; *see also* Def. Kumar's Notice of Removal

Ex. 3, ECF No. 1-3.  Kumar filed a notice of removal based on diversity jurisdiction on November 17, 2023.  *See* Def. Kumar's Notice of Removal, ECF No. 1.

Plaintiff filed her first expert witness list on January 11, 2024, designating Bratislav Velimirovic, M.D., as a non-retained expert witness.  Pl.'s Designation Non-Retained & Retained Experts 2, ECF No. 14.  She also designated Monica Cohen, a life care planner, as a retained expert witness.  *Id.* at 5.  She filed a separate designation of expert witnesses in May 2024, designating Charles Baum, Ph.D., an economist, as an expert witness.  Pl.'s Designation Retained Expert Witnesses 3, ECF No. 57.  She later filed Cohen's and Dr. Baum's expert reports with the court.  *See* P.'s First Suppl. Designation Retained Expert Witnesses Ex. B, ECF No. 60-1; Pl.'s Second Suppl. Designation Retained Expert Witnesses Ex. C, ECF No. 79-1.

On June 3, 2024, Defendants filed their expert designation, which included, among others, Richard V. Baratta, Ph.D., a biomechanical engineer; Arthur Cortez, M.D., a radiologist; and Michael Mrochek, M.D., a physician.  Defs.' Designation Experts 1–6, ECF No. 77.  Plaintiff moves to exclude the testimony of Dr. Baratta, Dr. Cortez, and Dr. Mrochek, while Defendants move to exclude the testimony of Dr. Baum, Cohen, and Dr. Velimirovic.

## II.    STANDARD

The Federal Rules of Evidence state that an expert witness may testify if:

> [I]t is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.  "[T]he trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).  "This entails a preliminary assessment of whether the reasoning or methodology

underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592–93.  Some factors to consider are whether the methodology in question has been tested, whether it has been subject to peer review and publication, what the known or potential rate of error is, and whether the method has been generally accepted in the relevant scientific community. *Id.* at 593–94.  However, this list of factors "neither necessarily or exclusively applies to all experts or in every case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).  "[W]hether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Id.* at 153.

"To trigger a *Daubert* inquiry, an expert's testimony, or its 'factual basis, data, principles, methods, or their application,' must be 'called sufficiently into question.'" *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 581 (5th Cir. 2000) (quoting *Kumho Tire*, 526 U.S. at 149).  However, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note to 2000 amendment.  In general, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Id.* (quoting *United States v. 14.38 Acres of Land Situated in Leflore County*, 80 F.3d 1074, 1078 (5th Cir. 1996)).

## III.    DISCUSSION

### A.  Defendants' Motion for Leave to File Sur-Reply

Defendants seek leave to file a sur-reply to Plaintiffs' motion to strike their expert Richard V. Baratta, Ph.D.  Under the Local Rules of the Western District of Texas, parties are allowed to file responses and replies to a motion, and then "[a]bsent leave of court, no further submissions on the motion are allowed." W.D. Tex. Civ. R. 7(e)(1).  A party may seek leave to file a sur-reply, but sur-replies "are heavily disfavored by courts." *Warrior Energy Servs. Corp. v. ATP Titan M/V*,

551 F. App'x 749, 751 n.2 (5th Cir. 2014) (citation omitted).   Sur-replies should be "limited to addressing only new arguments raised for the first time by the opposing party in their reply briefing and not included in the original motion."  *Dillard v. Internacional Realty Mgmt., LLC*, No. 1:22-cv-01215-DH, 2023 WL 7394416, at *1 (W.D. Tex. Nov. 8, 2023) (citation omitted).   Here, Defendants seek to file a sur-reply to "clarify the grounds [on] which Dr. Baratta has previously been permitted testimony in federal courts and clear up the misleading representations of Plaintiff on what kind of testimony Dr. Baratta is allowed to deliver."  Defs.' Mot. Leave File Sur-Reply Pl.'s Mot. Strike Expert Dr. Richard V. Baratta 1, ECF No. 130.  The attached sur-reply simply documents past cases in which Dr. Baratta was allowed to testify and what he was allowed to testify on.  Because the sur-reply does not address a new argument raised by Plaintiff in her reply, the Court will deny Defendants leave to file.

## B. Baratta Motion

Plaintiff objects to five of the conclusions established by Defendants' expert, Dr. Baratta. These conclusions are:

4.  Short-term muscle strain injury, particularly of the cervical spinal muscles and associated headache, while unlikely, cannot be completely excluded from the resulting occupant motions.

5.  The thoracic and lumbar motion would be minimal and supported by vehicle safety systems, larger muscle groups, and other supporting tissues; therefore, muscle strain in these regions would not be expected.

6.  The magnitude of the compressive spinal loads associated with accidents of this severity was within the range of several common activities of daily living in which structural tissue injuries would not be expected.

7.  The mechanism for a disc prolapse from an acute event is a combination of hyperflexion with forced compression, which was not present at any part of the spine during the subject accident for the Nissan driver, especially given that the compressive forces involved were less than that experienced during most activities of daily living.   The mechanism for structural aggravation of degenerative conditions of the lumbar, thoracic, or cervical spine also would not be present.

> 8. The head accelerations resulting from this accident would have been comparable to those encountered during normal activity and far below those associated with concussion or minor traumatic brain injury. There were no mechanisms in the accident that could account for traumatic head injuries.

Baratta Mot. 3, ECF No. 100. Plaintiff objects that Dr. Baratta's opinions are "not based on sufficient facts or data" and are "not the product of a reliable methodology that has been applied reliably to the facts of the case." *Id.* at 4. She points out that "Dr. Baratta did not interview witnesses, inspect vehicles, or perform a site inspection" in this case. *Id.* at 6. She also objects that Dr. Baratta "is not qualified to offer opinions regarding medical causation and/or specific injury causation." *Id.* at 4. Plaintiff cites to other cases where Dr. Baratta's testimony was limited or excluded because he was found to be giving medical opinions outside of his area of expertise. *Id.* at 5–6.

Defendants argue that Dr. Baratta's report is reliable because it uses "facts from the case, scholarly sources, and simulations." Defs.' Resp. Mot. Pl.'s Mot. Strike Expert Dr. Richard V. Baratta ¶ 6 [hereinafter Baratta Resp.], ECF No. 117. He also "relied on observations of the vehicle, simulations, data on the vehicle Plaintiff was driving, and experiments in accident reconstruction." *Id.* ¶ 7. As Defendants point out, Dr. Baratta could not examine Plaintiff's car even if he wanted to, as the car was repossessed before this suit was filed. *Id.* Defendants also note that Dr. Baratta's testimony as a biomechanical engineer has been permitted in past cases in the Western District of Texas. *Id.* ¶¶ 8–10.

First, the Court addresses whether Dr. Baratta's methodology is reliable. In preparing his report, Dr. Baratta relied on the police report, photographs of Plaintiff's Nissan, photographs of the accident site, Plaintiff's medical records, data on the model of Nissan Plaintiff was driving at the time, data on the Peterbilt 579 (the truck that Defendant Kumar was driving at the time),

simulations of the accident circumstances, Plaintiff's medical records and deposition, and numerous scholarly articles, among other materials.  Baratta Mot. Ex. 1, at 18–24, ECF No. 100-1.  Other courts have found similar analyses by Dr. Baratta to produce reliable results.  *See Herrera v. Werner Enters., Inc.*, No. SA-14-CV-385-XR, 2015 WL 12670443, at \*4 (W.D. Tex. Sept. 28, 2015) ("The list of academic and scholarly sources drawn upon indicates that the theories and principles involved in this analysis have been the subject of extensive peer review and testing, and are widely accepted in the scientific community."); *Collins v. Benton*, No. 18-7465, 2020 WL 3605942, at \*7 (E.D. La. July 2, 2020) (finding that "[Dr.] Baratta's methodologies are generally accepted in the scientific community" and that his methodology was reliable when "[h]e relied on approximately 40 peer-reviewed studies to reach the conclusions in his expert report" and "employed 'established and undisputed principles of Newtonian physics, dynamics, mechanics, materials science, tissue mechanics, anatomy, and physiology'" (citation omitted)).

It is true that Dr. Baratta did not examine the vehicles at issue here.  *See* Baratta Mot. Ex. 1, at 5–6 (stating that Dr. Baratta reviewed photographs of the Nissan and had no photographs of the Peterbilt 579 or trailer to review).  But as Defendants point out, he never had the opportunity to examine Plaintiff's Nissan.[1]  Baratta Resp. ¶ 7.  And other courts have concluded that the use of photographs, rather than an in-person inspection of the vehicles involved in the accident, is sufficient for an accident reconstruction.  *See Collins*, 2020 WL 3605942, at \*6 ("District court judges in the Eastern District of Louisiana have held that a biomechanical engineer relies on 'sufficient facts and data' even when the expert neither personally reviews the crashed vehicle nor visits the accident scene." (citation omitted)); *Onofre v. C.R. England, Inc.*, No. 5:15-CV-425-DAE, 2017 WL 3167325, at \*6 (W.D. Tex. Jan. 27, 2017) ("Dr. Baratta's use of photographs

---

[1] Defendants do not provide any explanation as to why their truck and trailer were not made available for Dr. Baratta's review.

among other data to consider the extent and nature of damage to Plaintiff's vehicle to formulate an opinion is both reasonable and sufficiently reliable under Rule 702."), *order vacated in part on reconsideration*, 2017 WL 4082366 (W.D. Tex. July 24, 2017).  Therefore, the Court cannot conclude that Dr. Baratta's conclusions are unreliable simply because he did not examine the vehicles themselves.  On the whole, the Court considers Dr. Baratta's methodology reliable.

Next, the Court addresses whether Dr. Baratta is testifying as to medical causation.  Dr. Baratta holds a Ph.D. in biomedical engineering.  Baratta Resp. Ex. 1, at 45, ECF No. 117-1.  He is also an accident reconstructionist accredited by the Accreditation Commission for Traffic Accident Reconstructionists.  Baratta Resp. Ex. 3, ¶ 2, ECF No. 117-3.  He has "been qualified as an expert in biomechanics and accident reconstruction over sixty times, including in the Western and Southern Districts of Texas."  *Id.*  That said, in his affidavit, he himself confirms that he is not qualified to testify on medical causation and states that he is not doing so in this case.  *Id.* ¶ 7.

"Over a dozen other federal courts have determined that biomechanical engineers . . . are qualified to testify about the forces generated by accidents and the probable effects of such forces on the human body, but not about whether the particular accident at issue is the cause of the plaintiff's injuries."  *Herrera*, 2015 WL 12670443, at *3; *see also Ramirez v. Escajeda*, No. EP-17-CV-00193-DCG, 2021 WL 1131721, at *10 (W.D. Tex. Mar. 24, 2021) (determining that biomechanical engineers "are qualified to render opinions 'as to the forces generated in a particular [event] and the *general types of injuries* those forces may generate'" but "are not ordinarily permitted to offer opinions about 'the precise cause of a specific injury'" (quoting *Bowers v. Norfolk S. Corp.*, 537 F. Supp. 2d 1343, 1377 (M.D. Ga. 2007))).  The Sixth Circuit has also stated that "biomechanic[al] [experts] are qualified to determine what injury causation forces are in general and can tell how a hypothetical person's body will respond to those forces, but are not

qualified to render medical opinions regarding the precise cause of a specific injury." *Laski v. Bellwood*, No. 99-1063, 2000 WL 712502, at *3 (6th Cir. 2000) (quoting *Smelser v. Norfolk S. Ry. Co.*, 105 F.3d 299, 305 (6th Cir. 1997)).

This principle can be seen in past cases addressing Dr. Baratta's testimony, where none of the courts permitted Dr. Baratta to testify as to medical causation. *See, e.g.*, *King v. Cardinal Servs., LLC*, No. 2:19-cv-00217-RSP, 2021 WL 1377261, at *2 (E.D. Tex. Apr. 11, 2021) ("Allowing Dr. Baratta to testify as to whether this collision did or did not cause, or was otherwise 'consistent with,' Plaintiff's particular injuries would exceed his scientific knowledge."); *Herrera*, 2015 WL 12670443, at *3 ("Dr. Baratta is qualified to testify about all matters relating to biomechanics and accident reconstruction . . . .  However, the Court also concludes that he is not qualified to render a medical opinion as to the specific cause of [the plaintiff's] injuries.").

Plaintiff argues that Dr. Baratta's conclusions in this case are similar to his conclusions in *King*, where he stated that "sprains of neck or lumbar tissues would not be consistent with being caused by the mechanics of this accident."  2021 WL 1377261, at *1; Baratta Mot. 4.  But, here, unlike in *King*, Dr. Baratta does not opine that any of Plaintiff's specific injuries would or would not be consistent with the type of accident that occurred.   All of Dr. Baratta's conclusions focus on the forces involved in the accident and their effect on a person's body, which Dr. Baratta is able to testify to.  Therefore, the Court will not exclude Dr. Baratta's testimony.

### C. Mrochek Motion

Plaintiff also moved to strike Defendant's expert Michael Mrochek, M.D.  Part of Plaintiff's complaint about the reliability of Dr. Mrocheck's testimony is that he never examined Plaintiff herself.  Mrochek Mot. 6–7, ECF No. 101.  In their response, Defendants point out that this is because Plaintiff did not permit Dr. Mrochek to examine her.  Defs.' Resp. Pl.'s Mot. Strike

Expert Dr. Michael Mrochek & Mot. Extend Time Dr. Michael Mrochek Suppl. Ops. ¶ 8, ECF No. 116.  Defendants requested that the Court grant them additional time to supplement Dr. Mrocheck's expert report with information from the physical examination.  *Id.* ¶ 12.  In her reply, Plaintiff concedes that "the most prudent path is to await Dr. Mrocheck's supplemental report . . . . Plaintiff will most likely seek permission to amend and/or supplement her Daubert motion against Dr. Mrochek (ECF 101) depending on the content of the supplemental report."  Pl.'s Reply Supp. Mot. Strike Defs.' Expert, Dr. Michael Mrochek 2, ECF No. 126.

Defendants moved to compel a physical examination of Plaintiff on June 21, 2024.  *See* Defs.' Opposed Mot. Compel Physical Examination, ECF No. 82.  This motion was granted on August 14, 2024.  *See* Order, ECF No. 105.  The parties notified the District Court on August 19, 2024, that a physical examination of Plaintiff with Dr. Mrochek was scheduled for August 23, 2024.  Notice Compliance Court's Order Physical Examination 1, ECF No. 109.  On August 28, 2024, Defendants filed a motion requesting an extension of time for Dr. Mrochek to supplement his opinion.  *See* Defs.' Unopposed Suppl. Mot. Extend Time Defs.' Expert Dr. Mrochek Suppl. Ops., ECF No. 122.  This was granted by the District Court, which gave Defendants until September 20, 2024, to supplement Dr. Mrocheck's report.  Order 1, ECF No. 127.  Defendants filed a supplemental response on September 20, 2024, providing Dr. Mrocheck's supplemental expert report.  *See* Defs.' Suppl. Resp. Pl.'s Mot. Strike Expert Dr. Michael Mrochek, ECF No. 135.  Since then, as far as this Court can determine from the docket, Plaintiff has made no further objections to Dr. Mrochek's supplemental expert opinion.

Plaintiff objects that Dr. Mrochek's opinion is "cumulative" of Defendants' other expert witnesses.  Mrochek Mot. 3–6.  The Court concludes that Dr. Mrochek's report, as supplemented, is not cumulative of the other expert reports, as Dr. Mrochek has been able to complete a physical

examination of Plaintiff and make his report based on that examination, which Defendants' other experts have not done. Plaintiff's further objection, that Dr. Mrochek's expert opinion is unreliable because it was only based upon Plaintiff's medical records, is also now moot due to Dr. Mrochek's examination of Plaintiff. Therefore, the Court will deny Plaintiff's motion to strike Dr. Mrochek's opinion.

### D. Cortez Motion

Plaintiff argues that the testimony of Defendant's expert Arthur D. Cortez, M.D., a radiologist, should be excluded because he relies "solely on a single MRI, with no comparison of any other diagnostic imaging for Plaintiff" to "opine[] that Plaintiff's injuries preexisted the subject accident." Cortez Mot. 3, ECF No. 103. Plaintiff points out that Dr. Cortez stated that "diagnostic findings like Plaintiff's 'are frequently observed in both patients with and without acute trauma.'" *Id.* Plaintiff complains that Dr. Cortez did not explain how he could differentiate whether Plaintiff's injury arose with or without acute trauma. *Id.* Plaintiff also takes issue with Dr. Cortez's opinion about Plaintiff's neck herniation at C5-C6, which he concludes could have an alternative cause other than the car accident. *Id.* Plaintiff points out that Dr. Cortez did not see Plaintiff's spinal discs during surgery, but he nonetheless rejects the opinion of the surgeon who did in favor of his own opinion. *Id.* at 4.

Defendants argue that Dr. Cortez's testimony is valuable because it will help the factfinders to understand "that damage which appears on the X-rays of Plaintiff's spine cannot definitively be attributed to the accident or the natural processes of growth, aging, and remodeling, and that the damage from both sources will often appear similar to the untrained eye or lay witness." Defs.' Resp. Mot. Pl.'s Mot. Strike Expert Dr. Arthur D. Cortez ¶ 7 [hereinafter Cortez Resp.], ECF No. 118. Defendants assert that this is important because most factfinders will be lay people who will

not be able to interpret an X-ray or might "assume that damage to the spine is necessarily from an accident." *Id.* Defendants argue that Plaintiff's objections to Dr. Cortez's testimony go to the weight of the testimony, not its admissibility. *Id.* ¶ 8. Defendants further assert that Plaintiff's statement that Dr. Cortez looked at a single image is false, as he reviewed all of the past medical records and imaging, as well as images from December 27, 2021, and September 29, 2022. *Id.* ¶ 9.

Plaintiff attaches what appear to be two separate expert reports from Dr. Cortez, one dated July 30, 2024, and one dated July 29, 2024. *See* Cortez Mot. Ex. 1, ECF No. 103-1. In their response, Defendants only attached the report from July 30, 2024. *See* Cortez Resp. Ex. 1, ECF No. 118-1. The Court is unclear as to whether only one or both of these reports constitute Dr. Cortez's opinion, but, regardless, the Court's analysis remains the same.

Dr. Cortez asserts that he reviewed multiple images and medical records, not simply "one" record. Cortez Resp. Ex. 3, ¶¶ 6, 8, ECF No. 118-3; *see also* Cortez Mot. Ex. 1, at 2, ECF No. 103-1 (listing all of the materials Dr. Cortez reviewed). The Court determines that his review of Plaintiff's records qualifies him to opine on her injuries. Additionally, "[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). Overall, Plaintiff mostly appears to object to the conclusions that Dr. Cortez drew, specifically the fact that he stated that Plaintiff's injuries could be caused without acute trauma and that he disagreed with Plaintiff's surgeon regarding her neck herniation. "But the test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995). The Court also notes that, with respect to the disagreement between Dr. Cortez

and Plaintiff's surgeon about her injuries, "an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert*, 509 U.S. at 592. The Court concludes that Plaintiff's concerns could be better addressed through cross-examination, rather than by excluding Dr. Cortez's testimony entirely. As a result, the Court denies Plaintiff's motion to strike Dr. Cortez's testimony.

### E. Baum Motion

Defendants object to the testimony of Plaintiff's economic expert, Charles Baum, Ph.D. Defendants argue that Dr. Baum "makes various unsubstantiated claims that Plaintiff was performing six hours of housework, five hours of cooking, six hours of home, lawn and vehicle maintenance, three hours of household maintenance, six hours of shopping, and five hours of traveling" per week. Baum Mot. ¶ 4, ECF No. 131. Defendants argue that Plaintiff's own testimony does not support the assertion that she was performing all of these tasks. *Id.* ¶ 5. They assert that these numbers were used to inflate Plaintiff's claim for damages. *Id.*

Plaintiff argues that Defendants are not asserting "that Dr. Baum's general methodology for calculating economic losses is improper. Instead, Defendants' objections focus solely on Dr. Baum's application of expert principles to the facts of the case, in particular certain input values Dr. Baum applied in his equation." Pl.'s Resp. Opp'n Defs.' Mot. Strike Expert Dr. Charles Baum 4, ECF No. 140. Plaintiff also argues that Defendants' objections are not specific enough, because Defendants did not explain what category of household labor they object to. *Id.* at 5. Plaintiff concludes that "to the extent that Defendants are attempting to assert that Dr. Baum miscalculated the number of hours [Plaintiff] spent on household labor, this is a matter that goes to the weight of Dr. Baum's testimony, not its admissibility." *Id.* at 7. Plaintiff also objects to Defendants' statement that she could not have engaged in five hours of travel time because she did not have a

car, pointing out that the numbers in question refer to Plaintiff's activities before her injuries, and before her injuries Plaintiff did have a car and had two jobs to travel to. *Id.* at 8. Plaintiff asserts that Dr. Baum's report has a sufficient foundation in that he relied upon Plaintiff's first amended complaint and initial disclosures, Monica Cohen's life care plan, and a phone call with Plaintiff. *Id.* at 7.

The Court agrees with Plaintiff. Defendants have not questioned whether Dr. Baum is qualified as an expert or whether his methodology is sound. Instead, Defendants' assertions focus on the numbers that Dr. Baum relied upon when using his methodology. "[T]he proper analysis under Rule 702 and *Daubert* is not whether *some* of the data *might* be questioned, but whether [the economic expert's] testimony is relevant and reliable, and whether the methods and principles upon which he has relied in forming his opinion have a sound basis in the field of economics." *Andrade Garcia v. Columbia Med. Ctr. of Sherman*, 996 F. Supp. 617, 623 (E.D. Tex. 1998). And the data that Dr. Baum used for his conclusions is not speculative or unreliable. Dr. Baum based the data he used to draw his conclusions on legal documents from the case, Plaintiff's life care plan, a case information sheet, and a phone call with Plaintiff. Baum Mot. Ex. A, at 41, ECF No. 131. Defendants appear to base their objections on the fact that currently, Plaintiff does not have a car—and thus cannot travel—and that her current landlord is responsible for maintenance of her home. Baum Mot., Ex. B, at 36:24–37:6, 41:1–14, ECF No. 131. These objections do not relate to Dr. Baum's data on Plaintiff's labor pre-injury, when she did have a car and may have been living elsewhere, *see id.* at 36:1–11. If Defendants do not feel that the data used by Dr. Baum in coming to his conclusions is correct, they can address this issue on cross-examination, but the Court will not exclude Dr. Baum's testimony.

**F.  Cohen Motion**

Defendants object to the expert testimony of Plaintiff's life care planning expert, Monica Cohen. They argue that Cohen's life care plan "simply repeats the recommendations of" Plaintiff's other experts and will not help the factfinder understand or determine a fact at issue. Cohen Mot. ¶ 4, ECF No. 132. They also argue that Cohen's recommendations for future care are not based on sufficient data, as Cohen "extrapolates the recommended care of Plaintiff's experts to create a litany of extra" treatments and procedures. *Id.* ¶ 5. They also argue that Plaintiff is not currently receiving many of the treatments recommended by her medical experts. *Id.* ¶ 6. Lastly, Defendants object to Cohen's methodology, stating that "she relies on cost tables which averages the population with gender differentiation" and that "[t]his simple application of tables . . . [is] not a reliable method for determining [Plaintiff's] actual needs." *Id.* ¶ 7.

Plaintiff objects that life care planners are allowed to rely on statements from physicians and other medical professionals to draw conclusions. Pl.'s Resp. Opp'n Defs.' Mot. Strike Expert Monica Cohen 5, ECF No. 139. Plaintiff also states that multiple other courts have permitted non-physician life care planners to testify. *Id.* at 6. Plaintiff adds that Cohen's life care plan will help the factfinder understand what future medical treatments may be necessary and assess future damages. *Id.* at 5–6. Plaintiff points out that Defendants never stated any specific line items in the life care plan that they take issue with. *Id.* at 7. Likewise, Plaintiff asserts that Defendants claim about "cost tables" fails because Defendants never explain why this is an unreliable methodology. *Id.* Finally, Plaintiff asserts that just because Defendants' expert, Jennifer Pavlik, disagreed with Cohen's assessment does not mean that Cohen's expert testimony should be excluded, but rather means that there is a fact issue for the jury to resolve. *Id.* at 8.

In their reply, Defendants continue to insist that Cohen has provided "significant recommendations beyond what Plaintiff's treating physicians have prescribed," but still provide

no specific examples.  Defs.' Reply Pl.'s Resp. Mot. Strike Expert Monica Cohen ¶ 2, ECF No. 142.

The Court first considers whether a non-physician life care planner can testify as to a plaintiff's future medical needs.  Other courts have found non-physician life care planners qualified to testify about physician recommendations for future treatment and procedures.  The court in *Robinson v. Ethicon, Inc.*, 580 F. Supp. 3d 452 (S.D. Tex. 2022) concluded that a non-physician who was a certified life care planner could "testify about [what] those tests, medicines, and procedures would cost if a medical doctor were to recommend or prescribe them." *Id.* at 460. Another court determined that a non-physician life care expert who "relied on . . . [the] [p]laintiff's physician[] to confirm that the items listed in her life plan report are medically necessary" could testify as to the plaintiff's life care plan. *Lee v. Fischer*, No. CV108-016, 2009 WL 10678390, at *2 (S.D. Ga. July 10, 2009).  In another case, the court concluded that the argument that a life care planner could not testify because he was not a doctor was "without merit" because the life care planner was not offering opinions as to what medical care the plaintiff required but rather "opining as to the means for providing the medical care deemed necessary by [the plaintiff]'s medical providers." *Hannah v. Armor Corr. Health Servs., Inc.*, No. 8:19-cv-596-TPB-SPF, 2021 WL 1777955, at *2 (M.D. Fla. Mar. 8, 2021).  Although not a physician, Cohen is an occupational therapist and certified life care planner.  Cohen Mot. Ex. A, at 35, ECF No. 132.  She has a master's degree in occupational therapy, as well as a bachelor's degree in public health.  *Id.*  She has completed many other life care plans and testified in three state court cases in Texas and New Mexico.  *Id.* at 36.  Therefore, she is qualified to testify as a life care planner.

Further, Cohen's reliance on the opinions of Plaintiff's examining doctors is permissible, and a life care plan is not simply summarizing the opinions of Plaintiff's doctors, as Defendants

claim. A life care plan is helpful because "it will assist the jury in determining appropriate damages for [the] [p]laintiff's future medical needs, if any." *Lee*, 2009 WL 10678390, at *3. Thus, a life care plan is beneficial in a way that is distinct from a physician's testimony. And "[i]t is permissible for an expert such as [a life care planner] to rely on the reports or information of other experts." *North v. Ford Motor Co.*, 505 F. Supp. 2d 1113, 1119 (D. Utah 2007). Another court stated that a non-physician life care planner is actually required to "build on a medical expert's foundation" and "tie his recommendations to independently established qualified expert opinions." *Smith v. Ethicon, Inc.*, No. 6:20-CV-222-REW-HAI, 2021 WL 4098408, at *14 (E.D. Ky. 2021). Cohen has done so here: she reviewed numerous medical records of Plaintiff and documented her past medical history, and she reviewed the medical opinions of Wilson Almonte, M.D., Spencer Miller, M.D., and Richard Newman, M.D. to come up with the life care plan. Cohen Mot. Ex. A, at 4–9, 13–17.

Defendants object to some of the future treatments that Cohen suggests that Plaintiff will need, stating that there is no basis for them. Cohen Mot. ¶ 5. However, Defendants do not state what particular costs they object to, leaving the Court to guess, which the Court declines to do. The projected future medical needs that Cohen included in her life care plan, which include pain management treatment, physical therapy, and a spinal cord stimulator implant, all stem from the recommendations of Dr. Almonte, Dr. Miller, and Dr. Newman. Cohen Mot. Ex. A, at 20–27. Therefore, the Court cannot conclude that there is no basis for the treatments and medications included in the life care plan.

The Court agrees with Plaintiff that Defendants' statement about Cohen's methodology with respect to relying on "cost tables" is vague and not fully explained; nor is it brought up again in Defendants' reply motion. In her report, Cohen explains that she relies on national cost data

and statistics from several sources. Cohen Mot. Ex. A, at 18. Her Data Resources section lists several sources, including MetLife, GoodRx, the Practice Management Information Corporation physicians' fee directory, Walgreens, medical supplies companies, and more. *See id.* at 28. To calculate life expectancy, she relied on data produced by the Center for Disease Control and Prevention's National Center for Health Statistics. *Id.* at 18. The Court concludes that Cohen's methodology is reliable and thus denies Defendants' motion to exclude her testimony.

### G. Velimirovic Motion

Defendants want to exclude Plaintiff's non-retained medical expert, Bratislav Velimirovic, M.D. Dr. Velimirovic was one of Plaintiff's treating physicians. Velimirovic Mot. ¶ 1, ECF No. 133. Defendants argue that Dr. Velimirovic's proposed testimony "is outside of his direct involvement in the suit." *Id.* ¶ 5. In their reply, Defendants clarify that they only want to limit Dr. Velimirovic's testimony: they assert that his testimony about medical costs and future treatment should be excluded. Defs.' Reply Pl.'s Resp. Mot. Strike Expert Dr. Bratislav Velimirovic ¶¶ 1–2 [hereinafter Velimirovic Reply], ECF No. 141. Defendants also argue that Plaintiff has not met the requirements of the Federal Rule of Civil Procedure 26 to allow Dr. Velimirovic to testify as a non-retained expert. Velimirovic Mot. ¶ 4.

In her response to Defendants' motion, Plaintiff asserts that non-retained experts can testify as to prognosis and medical costs related to the injury. Pl.'s Resp. Opp'n Defs.' Mot. Strike Expert Dr. Bratislav Velimirovic 4–6 [hereinafter Velimirovic Resp.], ECF No. 138. Even if a non-retained expert is limited in his testimony, Plaintiff argues that a treating physician should be allowed to offer forward-looking medical opinions, as they would be connected to the patient's treatment. *Id.* at 5–6. Plaintiff argues that physicians should be allowed to testify as to medical costs, since physicians likely have personal knowledge of what medical charges will be, based on

their experience.  *Id.* at 6.  Lastly, Plaintiff argues that any defect in Plaintiff's Rule 26 disclosure of Dr. Velimirovic is harmless and has not prejudiced Defendants.  *Id.* at 7–9.

First, the Court addresses the issue of whether Plaintiff's Rule 26 disclosure of Dr. Velimirovic was defective.  Plaintiff designated Dr. Velimirovic as a non-retained expert witness. Pl.'s First Suppl. Designation Non-Retained & Retained Experts 2, ECF No. 98.  A non-retained expert witness is subject to the requirements of Federal Rule of Civil Procedure 26(a)(2)(C), which requires disclosure of "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify."  *Jesus Church of Victoria Tex., Inc. v. Church Mut. Ins.*, 627 F. Supp. 3d 715, 723–24 (S.D. Tex. 2022); Fed. R. Civ. P. 26(a)(2)(C).  Rule 26(a)(2)(C) was added in 2010 in order to "resolve[] a tension that has sometimes prompted courts to require expert reports under Rule 26(a)(2)(B) even from witnesses exempted from the expert report."  Fed. R. Civ. P. 26(a)(2)(C) advisory committee's note to 2010 amendment.   Witnesses exempted from providing an expert report are allowed to "testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703, or 705."  Fed. R. Civ. P. 26(a)(2)(C) advisory committee's note to 2010 amendment.  "A treating physician is the prototypical expert who can be deposed or called to testify at trial without disclosing an expert report."  *Lee v. Valdez*, No. 3:07-CV-1298-D, 2008 WL 4287730, at *3 (N.D. Tex. Sept. 18, 2008).

Plaintiff asserts that Dr. Velimirovic will "testify concerning Plaintiff's injuries, her past and future medical bills, physical limitations and restrictions, past and future impairment, and her past and future pain and suffering and mental anguish."  Pl.'s First Suppl. Designation Non-Retained & Retained Experts 2.  This is not sufficient as a summary under Rule 26(a)(2)(C). Courts in the Fifth Circuit have noted that a summary under Rule 26(a)(2)(C) should contain the

expert's opinions, not just topics of testimony, as well as the facts on which the opinions are based. *E.g.*, *VeroBlue Farms USA Inc. v. Wulf*, No. 3:19-cv-764-X, 2023 WL 348016, at *8 (N.D. Tex. Jan. 20, 2023); *Aircraft Holding Sols., LLC v. Learjet, Inc.*, No. 3:18-CV-0823-D, 2022 WL 3019795, at *5 (N.D. Tex. July 29, 2022); *Cadena v. El Paso Cnty.*, No. EP16CV00209FMRFC, 2017 WL 11621471, at *2 (W.D. Tex. Aug. 11, 2017).   Although the records of Plaintiff's treatment by Dr. Velimirovic were disclosed to Defendants, "several district courts [in the Fifth Circuit] have rejected the notion that a disclosure solely of medical records is sufficient as a summary of the facts and opinions to which the witness is expected to testify." *Talbot v. Elec. Ins. Co.*, No. 17-299-SDD-EWD, 2018 WL 6257110, at *3 (M.D. La. Nov. 29, 2018).   In her response, Plaintiff appears to concede that her disclosure was defective but argues that the Court should either find that such a violation was harmless or should grant Plaintiff leave to supplement her Rule 26 disclosure.   Velimirovic Resp. 3, 7–9.

Generally,

If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1).   "Exclusion of the evidence is mandatory and automatic unless the party demonstrates substantial justification or harmlessness." *Red Dot Bldgs. v. Jacobs Tech., Inc.*, No. 11–1142, 2012 WL 2061904, at *3 (E.D. La. June 7, 2012).   There are four factors to consider when determining whether substantial justification or harmlessness exists: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Bitterroot Holdings, L.L.C. v. MTGLQ Invs., L.P.*, 648 F. App'x 414, 419 (5th Cir.

2016) (quoting *Texas A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003)).

Testimony from a physician who treated Plaintiff after the accident is important to the case. Prejudice to Defendants appears to be minimal. As Plaintiffs point out, Dr. Velimrovic has been designated as a non-retained expert since January 11, 2024. Velimirovic Resp. 7; Pl.'s Designation Non-Retained & Retained Experts 2, ECF No. 14. The close of discovery was on September 2, 2024, meaning that Defendants had time to depose Dr. Velimirovic if they so wished. First Am. Scheduling Order 1, ECF No. 87. Defendants did not raise the subject of his Rule 26 disclosure until the filing of the Velimirovic Motion in September 2024. *See Chavez v. Home Depot USA, Inc.*, No. H-22-1700, 2023 WL 6119881, at \*5 (S.D. Tex. Sept. 18, 2023) ("In the context of treating physician designations, courts generally find 'little, if any prejudice' when a party clearly identifies the designated treating physician it plans to use as an expert and does so long before trial." (citation omitted)); *Mahar v. Nat'l R.R. Passenger Corp.*, No. 20-2994-WBV-DMD, 2022 WL 1102221, at \*6 (E.D. La. Apr. 13, 2022) ("[The defendant] cannot claim prejudice where it purposefully chose not to depose [the] [p]laintiff's treating physicians and took no other steps to obtain information regarding their opinions."). Plaintiff and Defendants all acknowledge that Defendants' experts have relied upon Dr. Velimirovic's medical records in coming to their own conclusions, so Defendants likely already have an idea of what Dr. Velimirovic plans to testify about. Velimirovic Resp. 3, 7; Velimirovic Reply ¶ 5. As to the question of whether a continuance is possible, the Court notes that this case is advanced and that the deadline for dispositive motions has already passed. *See* First Am. Scheduling Order. Any further delay would have an adverse effect on the schedule of the District Court. The Court further notes that Plaintiff has provided no good explanation for her failure to provide a proper Rule 26 disclosure, simply stating that it was

inadvertent on her part.  Velimirovic Resp. 8.  But on balance, the Court concludes that the defect in Dr. Velimirovic's Rule 26 disclosure is harmless and does not require further excluding or limiting his testimony other than what will be discussed below.

The second question to be resolved is whether Dr. Velimirovic should still be limited in hist testimony because he is a non-retained expert.  Plaintiff relies on *Torres v. Wal-Mart Stores E., L.P.*, 555 F. Supp. 3d 1276 (S.D. Fla. 2021), which asserts that the Rules do not distinguish between retained and non-retained experts other than the need for an expert report.  *Id.* at 1290.  Therefore, a treating physician, who is generally a non-retained expert, can still provide any opinion, regardless of whether it was formed in the course of treatment or not.  *Id.* at 1291.  Even so, many courts in the Fifth Circuit draw a distinction between the testimony of retained experts, who must file an expert report under Rule 26(a)(2)(B), and non-retained experts.  *See, e.g.*, *Jesus Church of Victoria Tex.*, 627 F. Supp. 3d at 723 (Non-retained experts are "limited to expert opinions based upon [their] personal knowledge and observations." (citation omitted)); *Cantu v. Wayne Wilkens Trucking, LLC*, 487 F. Supp. 3d 578, 583 (W.D. Tex. 2020) (Information a physician learned in the natural course of treating a patient is not information derived while preparing for trial and thus need not be disclosed under Rule 26(a)(2)(B)."); *Russell v. Big V. Feeds, Inc.*, No. 4:23-CV-622, 2024 WL 4528913, at *3 (E.D. Tex. Oct. 18, 2024) (stating that non-retained experts "must be able to base their testimony upon personal knowledge acquired during treatment" (citation omitted)).  The First and Sixth Circuits have also determined that there is a limit to what non-retained experts can testify to.  *See Downey v. Bob's Disc. Furniture Holdings, Inc.*, 633 F.3d 1, 7 (1st Cir. 2011) (concluding that "as long as an expert was not retained or specially employed in connection with the litigation, and his opinion about causation is premised on personal knowledge and observations made in the course of treatment, no report is required

under the terms of Rule 26(a)(2)(B).")"; *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 869–70 (6th Cir. 2007) (stating that a treating physician did not need to file an expert report when the treating physician was not retained and formed his opinion as to causation at the time he treated the plaintiff).

Still, while a treating physician is limited to his opinion formed through personal knowledge by treating the plaintiff, there is not any requirement that a treating physician limit himself to observations of the past, as Defendants appear to suggest. "[A] 'treating physician may opine as to the causation of a plaintiff's injuries and a plaintiff's prognosis as long as the doctor formed those opinions based on the care-provider's personal knowledge and observations obtained during the course of care and treatment.'" *Chavez*, 2023 WL 6119881, at *3 (quoting *Kim v. Time Ins. Co.*, 267 F.R.D. 499, 502 (S.D. Tex. 2008)). "Opinions of treating physicians as to the cause of an injury or degree of future injury based on an examination of the patient 'are a necessary part of the treatment of the patient.'" *Mattingly v. Home Depot U.S.A., Inc.*, No. 1:08–CV–341, 2009 WL 10676567, at *4 (E.D. Tex. Aug. 4, 2009) (quoting *Shapardon v. W. Beach Ests.*, 172 F.R.D. 415, 417 (D. Haw. 1997)). There is no reason why Dr. Velimirovic cannot testify as to future medical needs or future treatment, as long as he bases his opinion on facts obtained through treating Plaintiff.

As to medical costs, Dr. Velimirovic can certainly testify as to the costs incurred by Plaintiff through his treatment of her. That said, the Court agrees with other courts that have limited the ability of non-retained expert treating physicians to testify about medical bills in general. In *Russell*, for example, the court noted that a non-retained expert testifying about the medical bills of other providers would not arise from facts observed in the ordinary treatment of the plaintiff. 2024 WL 4528913, at *4–5. Therefore, the court prohibited the experts from

testifying about another provider's billing practices.  *Id.* at *5.  In another case, the court also prohibited a non-retained expert from "testify[ing] about the reasonableness of medical bills that are unrelated to his treatment and that he only obtained in preparation for litigation."  *Galvez v. KLLM Transp. Servs., LLC*, 575 F. Supp. 3d 748, 755 (N.D. Tex. 2021).  The Court will exclude Dr. Velimirovic from testifying about medical bills and costs where the source of his opinion would not derive from information learned through his treatment of Plaintiff.

Therefore, the Court will partially grant Defendants' motion and limit Dr. Velimirovic's testimony to facts and opinions, including about medical costs and bills, formed through his treatment of Plaintiff and "that were *not* produced specifically in preparation for the trial of this matter."  *Jesus Church of Victoria Tex.*, 627 F. Supp. 3d at 724 (emphasis added) (citation omitted).

## H.  Motion for Jury Instructions on Spoliation

Lastly, Defendants argue that they are entitled to a jury instruction on spoliation, due to Plaintiff's failure to retain the car that was involved in the collision.  They argue that Plaintiff acted in bad faith "because she allowed the vehicle to be repossessed despite knowing that she would be suing Defendants for personal injuries because of a motor vehicle accident."  Spoliation Mot. ¶ 3, ECF No. 129.  They assert that Plaintiff knew that she would be suing Defendants as early as December 27, 2021 (when she was treated at Desert Imaging, *see* Spoliation Mot. Ex. F, ECF No. 129), and yet she allowed her car to be repossessed sometime after October 2022.  *Id.* ¶ 2.  They argue that "[t]he extent of damage to Plaintiff's vehicle is of extreme importance to Defendants" and that they are left prejudiced because they cannot examine the vehicle.  *Id.* ¶ 6.

Plaintiff argues that Defendants were not prejudiced because their expert, Abraham Chairez, used the existing evidence "to draw detailed conclusions about the vehicles and forces that were involved in the subject collision."  Pl.'s Resp. Defs.' Mot. Jury Instr. Regarding

Spoliation 5 [hereinafter Spoliation Resp.], ECF No. 134.  She also argues that Defendants have not established that she acted in bad faith, stating that "[t]he repossession of Plaintiff's car was adverse and unwelcome, and it was absolutely not of Plaintiff's own making."  *Id.* at 6.

"Spoliation is the destruction or the significant and meaningful alteration of evidence." *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010).  There are three elements for a claim of spoliation: "(1) the spoliating party must have controlled the evidence and been under an obligation to preserve it at the time of destruction; (2) the evidence must have been intentionally destroyed; and (3) the moving party must show that the spoliating party acted in bad faith."  *Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 F. App'x 565, 574 (5th Cir. 2020).  "Bad faith, in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence."  *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015).  In other words, "[a] [party] alleging spoliation must establish that the [other party] *intentionally* destroyed the evidence for the purpose of depriving opposing parties of its use. . . .  It is insufficient to show that a party acted negligently . . . ."  *Coastal Bridge Co.*, 833 F. App'x at 573.

"When a party is prejudiced, but not irreparably, from the loss of evidence that was destroyed with a high degree of culpability, a harsh but less extreme sanction than dismissal or default is to permit the fact finder to presume that the destroyed evidence was prejudicial."  *Rimkus*, 688 F. Supp. 2d at 618.  This requires the party that was prejudiced to show:

> (1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Coastal Bridge Co.*, 833 F. App'x at 574.  A party has the duty to preserve evidence when the party "has notice that the evidence is relevant to litigation or . . . should have known that the

evidence may be relevant to future litigation." *Rimkus*, 688 F. Supp. 2d at 612 (quoting *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008)).

Defendants cite to *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583 (4th Cir. 2001) for support. Spoliation Mot. ¶¶ 5–6. But the Court notes that *Silvestri* is distinguishable from this case. In *Silvestri*, the plaintiff retained accident reconstructionists to examine the damaged car and visit the crash site before a lawsuit was filed. 271 F.3d at 586. The experts informed the plaintiff's attorney that the defendant should also have an opportunity to inspect the car. *Id.* at 591. The court concluded that spoliation occurred because the car "was preserved in its post-accident condition for perhaps two to three months, or more, a period during which [the plaintiff], his lawyer, and his experts recognized not only that they would be suing [the defendant] but also that [the defendant] should be given an opportunity to inspect the vehicle." *Id.* Here, Plaintiff did not hire her own experts to examine the car, and there is no evidence that she was on notice that she should give Defendants an opportunity to examine the car. Further, *Silvestri* is a Fourth Circuit case, and the court in *Rimkus* noted that, unlike the Fifth Circuit, the Fourth Circuit has held "that bad faith is not essential to imposing severe sanctions if there is severe prejudice." 688 F. Supp. 2d at 614.

Defendants have not shown that Plaintiff intentionally destroyed any evidence. Plaintiff's deposition testimony is that after her divorce, she was no longer able to make the payments on her car. Spoliation Resp. Ex. 1, at 41:3–8, ECF No. 134-1. As a result, the car was repossessed. *Id.* at 41:14. Defendants argue that a party "may spoliate evidence through inaction." Defs.' Reply Mot. Jury Instr. Spoliation ¶ 3, ECF No. 136. However, it is unclear what action they wanted or expected Plaintiff to take in this situation. And even if Plaintiff could have taken action to keep her car, Defendants have produced no evidence that her failure to act was in bad faith. Plaintiff stated multiple times in her deposition that she does not recall when the car was repossessed, so it

is unclear whether she was contemplating a lawsuit at the time of repossession. Spoliation Resp. Ex. 1, at 43:2–8, 46:3–24, 49:17–20. Either way, Plaintiff may have thought that the photographs that she had of her car were sufficient evidence for a future lawsuit. And Defendants have not shown that Plaintiff knew that allowing her car to be examined by Defendants' experts would be detrimental to her claim. Lastly, there is no evidence that Defendants were prejudiced by the loss of the car, since their experts were still able to draw conclusions about the accident. *See* Spoliation Resp. Ex. 2, ECF No. 134-2.

For the above reasons, the Court will not grant the motion for a jury instruction on spoliation.

## IV.    CONCLUSION

For the foregoing reasons:

- Plaintiff Nancy Cano Bustillos's Motion to Strike Defendants' Expert, Richard V. Baratta (ECF No. 100) is **DENIED**;

- Plaintiff's Motion to Strike Defendants' Expert, Dr. Michael Mrochek (ECF No. 101) is **DENIED**;

- Plaintiff's Motion to Strike Defendants' Expert, Dr. Arthur D. Cortez (ECF No. 103) is **DENIED**;

- Defendants Kumar and Prince Freight Carrier, Inc.'s Motion for Jury Instruction of Spoliation (ECF No. 129) is **DENIED**;

- Defendants Kumar and Prince Freight Carrier, Inc's Motion for Leave to File Sur-Reply to Plaintiff's Motion to Strike Expert Dr. Richard V. Baratta (ECF No. 130) is **DENIED**;

- Defendants Kumar and Prince Freight Carrier, Inc.'s Motion to Strike Expert Dr. Charles Baum (ECF No. 131) is **DENIED**;

- Defendants Kumar and Prince Freight Carrier, Inc.'s Motion to Strike Expert Monica Cohen (ECF No. 132) is **DENIED**; and

- Defendants Kumar and Prince Freight Carrier, Inc.'s Motion to Strike Expert Dr. Bratislav Velimirovic (ECF No. 133) is **GRANTED in part** and **DENIED in part**.

  **SIGNED** this 4th day of February, 2025.

  _____
  **ROBERT F. CASTAÑEDA**
  **UNITED STATES MAGISTRATE JUDGE**